**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES DISTRICT JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

February 28, 2023

LETTER TO THE PARTIES

    RE:    *Lakisha S. v. Commissioner, Social Security Administration*
              Civil No. SAG-22-1280

Dear Counsel:

      On May 27, 2022, Plaintiff Lakisha S., who appears *pro se*, petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny her claim for Supplemental Security Income Benefits and Disability Insurance Benefits. ECF 1. Plaintiff did not file a motion for summary judgment before the filing deadline, but I have considered the SSA's motion for summary judgment and Plaintiff's handwritten response.[1] I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny Defendant's motion, reverse the Commissioner's decision, and remand the case to the Commissioner for further consideration. This letter explains my rationale.

      This case has a lengthy procedural history, spanning over eight years. Plaintiff filed her claims for benefits on October 28, 2014, alleging a disability onset date of August 12, 2013.[2] Tr. 222–34. Her claims were denied initially and on reconsideration. Tr. 132–36, 137–40. On February 3, 2017, Administrative Law Judge ("ALJ") Jesus Ortis held a hearing at which Plaintiff was represented by counsel, Tr. 30–60, and then issued a decision denying benefits. Tr. 13–23. Following Plaintiff's appeal to this Court, I issued an opinion on September 23, 2019, remanding for three reasons: (1) to provide an adequate analysis of Plaintiff's limitations in the area of concentration, persistence, or pace, consistent with the Fourth Circuit's mandate in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015); (2) to consider the opinion of Dr. Adams, Plaintiff's treating physician, regarding Plaintiff's ability to concentrate, persist, or maintain pace; and (3) to further

---

[1] After the SSA filed its motion, the Clerk's Office sent a Rule 12/56 letter to Plaintiff, advising her of the potential consequence of failing to oppose the dispositive motion. ECF 19. Plaintiff timely filed a handwritten response asking the Court to review her case and not dismiss it. ECF 20.

[2] Plaintiff subsequently amended her date of onset to January 1, 2015. Tr. 243.

analyze Plaintiff's standing and walking abilities in the RFC.  Tr. 980–86 (*Lakisha S. v. Comm'r*, No. SAG-18-1708 (D. Md. Sept. 23, 2019)).  On remand. a different ALJ, Robert Baker, Jr., held a second hearing on August 27, 2020.  Tr. 936–66.  ALJ Baker issued a new decision on December 3, 2020, again denying benefits and finding that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame.[3]  Tr. 911–28.  ALJ Baker's 2020 decision now constitutes the final, reviewable decision of the SSA.  *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. §§ 404.984(d), 416.1484(d), 422.210(a).

The relevant differences between the two ALJ decisions issued in this case are significant here.  In the 2017 decision, ALJ Ortis found that Plaintiff suffered the severe impairments of "left knee major joint, depression, and anxiety."  Tr. 15.  At step three, ALJ Ortis considered the "paragraph B" criteria and found that Plaintiff had moderate limitations in two of the four broad functional areas, including (1) understanding, remembering, or applying information and (2) concentrating, persisting, or maintaining pace ("CPP").[4]  Tr. 16.  The CPP limitation was based on treatment notes related to Plaintiff's depression and her reported decreased concentration.  *Id.*  ALJ Ortis noted that Plaintiff's "history of conservative mental health treatment with no inpatient hospitalizations" supported "less than marked limitations."  Tr. 17.  ALJ Ortis then found that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except lift, carry, push, pull twenty pounds occasionally, ten pounds frequently, sit for six hours in a workday, stand/walk for six hours in an eight hour workday, with standing and walking, this individual would have the option to alternate to sitting for up to fifteen minutes after every two hours of either standing or walking, assuming they'd remain on task in either the standing or walking postural positions, this individual could frequently operate left foot controls, this individual could never climb ladders, ropes, scaffolds, never crawl, occasional ramps and stairs, occasionally balance, stoop, kneel, crouch, this individual would never work at unprotected heights or around moving mechanical parts such as machinery on a factory floor or on earth moving equipment, this individual could perform simple, routine tasks, make simple, work-related decisions, have occasional interactions with supervisors, co-workers, and the general public, any time off task would be accommodated by normal breaks.

Tr. 17.

By contrast, at step two, ALJ Baker found that Plaintiff suffered from the severe impairments of "degenerative disc disease of the lumbar spine with radiculopathy and degenerative

---

[3] This decision does not reflect Plaintiff's amended onset date of January 1, 2015.  Tr. 911, 913.  Rather, ALJ Baker issued his decision using August 12, 2013, as the onset date.  *Id.*

[4] In interacting with others and adapting or managing oneself, ALJ Ortis found that Plaintiff suffered only mild difficulties.  Tr. 16–17.

joint disease of the left knee." Tr. 913. He determined that Plaintiff's depression and anxiety, among other conditions, were nonsevere. Tr. 914. "In making this finding, [ALJ Baker] considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1)." *Id.* ALJ Baker determined that Plaintiff had only mild limitations in all four functional areas based on "consistent[] stable and normal mental findings on examination" and Plaintiff's activities of daily living, including "preparing simple meals, cleaning, driving a car, shopping in stores monthly, paying bills, handling a savings account, and using a checkbook." Tr. 915. ALJ Baker then determined at step three that none of Plaintiff's impairments, alone or in combination, met the severity of those in the listings.[5] *Id.*

> ALJ Baker determined that Plaintiff maintained the RFC to:
>
> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can stand and/or walk for 2 hours in an 8-hour workday. She can operate foot controls with the left foot occasionally. She must be able to stand for 3 minutes as an alternate to sitting after every hour of sitting. She can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs. She can occasionally balance, stoop, kneel, crouch, and crawl. She must avoid even moderate exposure to unprotected heights, moving mechanical parts, dusts, odors, fumes, and other pulmonary irritants.

Tr. 917. ALJ Baker then concluded that because Plaintiff could perform jobs that existed in significant numbers in the national economy, she was not disabled. Tr. 927–28.

I have carefully reviewed the ALJ's opinion and the entire record. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (mapping an analytical framework for judicial review of a *pro se* action challenging an adverse administrative decision, including: (1) examining whether the SSA's decision generally comports with regulations, (2) reviewing the ALJ's critical findings for compliance with the law, and (3) determining from the evidentiary record whether substantial evidence supports the ALJ's findings).

On remand, the ALJ was specifically instructed to either include an RFC limitation to address Plaintiff's moderate CPP limitation or explain why such a limitation was not needed. Tr. 985. The ALJ was also instructed to properly evaluate the medical opinion of Dr. Adams, Plaintiff's treating physician, who opined that Plaintiff had marked or severe limitations in multiple functional areas. *Id.* ALJ Ortis had afforded this opinion "limited weight" based on Plaintiff's activities of daily living, but never explained how those activities of daily living led to his conclusion. *Id.* The ALJ was also instructed to reassess Plaintiff's physical RFC, as it did not adequately account for the amount of time that Plaintiff could stand. *Id.* at 985–86.

---

[5] ALJ Baker analyzed Plaintiff's physical impairments under Listings 1.02 and 1.04, but did not evaluate whether Plaintiff's mental impairments, which he had found nonsevere, met or equaled any of the relevant listings. Tr. 915–17.

*Lakisha S. v. Commissioner, Social Security Administration*
Civil No. SAG-22-1280
February 28, 2023
Page 4

Here, the RFC does not include a limitation to account for Plaintiff's CPP abilities, nor does the ALJ explain why no limitations are necessary. Tr. 917–26. In fact, the RFC analysis contains no discussion of Plaintiff's mental impairments or treatment thereof beyond the medical opinion evaluations. *Id.* Had the 2020 ALJ opinion been the first ALJ opinion in this case, failure to explain the lack of an RFC limitation where the ALJ had found only a mild CPP limitation would not have been error under *Mascio* (although Plaintiff presumably still may have contested the ALJ's failure to find her mental impairments severe at step two). In this case, however, this Court had specifically remanded the case to the SSA for further discussion of Plaintiff's CPP limitations in the RFC analysis, and the failure to provide any such discussion constitutes error. *Sullivan v. Hudson*, 490 U.S. 877, 885–86 (1989) ("Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review."); *see also Myers v. Colvin*, No. 4:14-cv-32, 2015 WL 3830972 *16 (E.D. Va. Dec. 24, 2014) (quoting *Sullivan*, 490 U.S. at 885) ("The ALJ is not free to disregard the district court's order, which may 'include detailed instructions concerning the scope of the remand, the evidence to be adduced, and the legal or factual issues to be addressed.'").

Instead of providing the explanation required by this Court's remand order, the ALJ determined that the basis for such an explanation no longer existed because, at step two, the ALJ found Plaintiff's CPP concerns to be only mild rather than moderate. This finding would have been permissible if the "new findings in [the] post-remand decision [were] 'based, in part, on new evidence.'" *Roger B. v. Kijakazi*, No. 21-2888-BAH, 2022 WL 16701201, at *3 (D. Md. Nov. 3, 2022) (quoting *Tanner v. Comm'r of Soc. Sec.*, 602 F. App'x 95, 98 (4th Cir. 2015)). Though the ALJ's new finding is purportedly based, in part, on new evidence, *see* Tr. 915 (citing, *inter alia*, Ex. 29F which corresponds to Tr. 1220–73), this evidence does not support the ALJ's conclusion that Plaintiff's CPP abilities are now mild, not severe. The ALJ explained that this determination was based on "the claimant [having] consistently exhibited stable and normal mental findings on examination, aside from some variability in mood." Tr. 915. However, a review of the medical records cited by the ALJ reveals that Plaintiff did not "consistently exhibit[] stable and normal mental findings on examination." *Id.*

Plaintiff first began seeing Dr. Adams to address her depression symptoms in March 2014. Tr. 458–64, 616. Though Dr. Adams's treatment notes do indicate some stable findings, over the course of his yearslong treatment history with Plaintiff, his notes include numerous, if not mostly, abnormal findings, contrary to the ALJ's assertion. For example, on May 12, 2015, Dr. Adams indicated that Plaintiff was in an "OK" mood, that she had "[s]ome depression and anger," and that she was "partial[ly] respons[ive] to treatment/minor complication." Tr. 495–96. On June 9, 2015, Dr. Adams changed Plaintiff's antidepressant prescription to zolpidem and fluoxetine[6] for "anxiety and depression augmentation" when her "mood [was] down," she was sleeping poorly, she was "[m]ore anxious in many situations," had an "anxious/dysphoric affect," and was "[t]earful and crying at times." Tr. 836. In October 2015, Dr. Adams noted that Plaintiff was not responsive

---

[6] Records indicate that Plaintiff was previously prescribed Zoloft and Wellbutrin as well. Tr. 467, 477.

to her new medications, that she "[c]ontinue[d] to have crying spells" among other symptoms. Tr. 850. In April 2016, Dr. Adams noted that Plaintiff's mood was again "down," that her "[a]nxiety and uncertainty have increased," and that he would change her medications "due to 'blackouts'" and the recommendation of Plaintiff's neurologist. Tr. 873. Treatment notes indicate Plaintiff remained stable at times in 2016 and 2017 despite often noting crying spells and presenting with poor eye contact, dysphoric mood, blunted affect. *See, e.g.*, Tr. 876–97, 1222–32. In May 2018, however, Dr. Adams noted that "[t]his is [Plaintiff's] first visit since her recent hospitalization at Franklin Square for depression." Tr. 1240. In February 2019, Plaintiff reported "occasional down moods and crying spells," though Dr. Adams noted her status was stable. Tr. 1252–53. By December 2019, Plaintiff's condition had worsened as she was "down at times[, h]as episodes where she does not want to get out of bed[, and h]as crying spells," as well as "more panic" symptoms. Tr. 1262. In February 2020, Dr. Adams noted Plaintiff's "persistent depressed mood," among other symptoms. Tr. 1266. In July 2020, Dr. Adams noted that Plaintiff was "down the past few days" and that she "[g]oes out very little. This is more driven by depression than by the restrictions of the viral pandemic." Tr. 1268–69. The ALJ did not explain how this evidence supports his finding that Plaintiff was generally "stable and normal," leading the ALJ to conclude Plaintiff only had mild limitations in the four functional areas, including CPP.

Nor did the ALJ explain how Plaintiff's activities of daily living, including "preparing simple meals, cleaning, driving a car, shopping in stores monthly, paying bills, handling a savings account, and using a checkbook" otherwise support the ALJ's findings, especially considering testimony from both Plaintiff and her sister that Plaintiff's "anxiety and depression . . . interfere[] with her ability to concentrate," that Plaintiff rarely leaves the house, and that Plaintiff "was committed in 2017 due to not talking." Tr. 915, 918.

The ALJ was also instructed to properly consider the medical opinion of Plaintiff's treating physician, Dr. Adams, on remand. Tr. 985. "[T]he treating physician rule is well-established." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 106 (4th Cir. 2020). It "requires that ALJs give 'controlling weight' to a treating physician's opinion on the nature and severity of the claimant's impairment if that opinion is (1) 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and (2) 'not inconsistent with the other substantial evidence' in the record." *Id.* (citing 20 C.F.R. § 404.1527(c)(2)).[7] Should an ALJ decide that a treating physician's opinion is not entitled to controlling weight, the ALJ must still determine the appropriate weight to assign the opinion by considering several factors, including whether and to what extent the author of the opinion examined or treated the claimant, the supportability and consistency of the opinion, the author's specialization, and any other factor that is relevant given the facts and circumstances of the case. *Id.*; 20 C.F.R. §§ 404.1527(c), 416.927(c).

ALJ Baker afforded "little weight" to Dr. Adams's October 2015 opinion, in which he opined that Plaintiff has moderate to marked limitations in understanding and memory, moderate

---

[7] 20 C.F.R. §§ 404.1527 and 416.927 apply to claims filed before March 27, 2017. They were replaced by §§ 404.1527c and 416.920c, respectively, for claims filed on or after March 27, 2017. As noted above, Plaintiff's claims were filed in 2014, so §§ 404.1527 and 416.927 apply here.

to severe limitations in sustained concentration and persistence, and marked to severe limitations in social interaction. Tr. 614–16, 925. The ALJ purportedly based this conclusion on the fact that Dr. Adams's "opinion is not consistent with his own findings on examination" and on Plaintiff's self-reported activities of daily living. *Id.* Specifically, the ALJ determined that, "[a]s discussed above in the nonsevere impairments section, the claimant has consistently exhibited stable and normal mental findings on examination, aside from some variability in mood . . . ." *Id.* The ALJ cited the exact same medical records as he did in the nonsevere impairments section, which, as discussed above, do not demonstrate "consistent[ ] stable and normal findings." *Id.*

Additionally, the Fourth Circuit's recent decision in *Cannon v. Comm'r of Soc. Sec. Admin.*, --- F.4th ---, 2023 WL 2147306 (4th Cir. 2023), makes clear that the ALJ's analysis here is flawed. In that case, the Fourth Circuit held that the ALJ erred in evaluating a treating physician's medical opinion by "fail[ing] to identify which medical evidence in [the claimant's] extensive recorded presented inconsistences with [the treating physician's] opinion" and by, "[a]fter declining to apply the 'treating physician rule[,' ] fail[ing] to address each of 20 C.F.R. § 404.1527(c)'s six factors." *Id.* at *7. The ALJ in *Cannon* had afforded the medical opinion of the claimant's treating physician "little weight," but the Fourth Circuit determined that this was in error because "[t]he length, frequency, and nature of [the claimant's] relationship with [the treating physician] were important facts that the ALJ did not properly consider or acknowledge." *Id.* at *9. The Fourth Circuit explicitly noted that "[m]ere acknowledgement of the regulation's existence is insufficient," "an ALJ should give adequate attention to each 20 C.F.R. § 404.1527(c) factor." *Id.* at *7–8. As in *Cannon*, the ALJ here failed to adequately address each factor, particularly the length, nature, and extent of the treating relationship, in determining Dr. Adams's opinion was entitled only to "little weight." [8] As such, remand is warranted.

The ALJ also concluded that a December 2016 letter[9] from Melanie Ervin, RN-C, Plaintiff's therapist since 2014, was entitled to "no weight" as it was "neither valuable nor persuasive" due to its conclusion that Plaintiff is unable to work, a decision reserved exclusively for the ALJ. Tr. 925–26. The ALJ failed to analyze the rest of the information in the letter,

---

[8] The Fourth Circuit also held that the ALJ improperly afforded greater weight to the opinions of the non-treating, non-examining state consultants who reviewed the claimant's record. *Cannon*, 2023 WL 2147306, at *11. "[T]he ALJ erred by failing to consider the important distinctions between these treating and non-treating relationships and extending more weight to the non-examining physicians' opinions than to [the treating physician's]." *Id.* The ALJ here similarly afforded greater weight to the opinions of the non-treating, non-examining state psychological consultants than to that of Dr. Adams. *See* Tr. 923–24 (affording "significant weight" to the opinions of Drs. Hinkeldey and Walcutt).

[9] The ALJ cited this page in the record as evidence that Dr. Adams's conclusions were not consistent with his treatment notes. Tr. 925 (citing Ex. "21F/1," which corresponds to Tr. 681). It is unclear how this opinion detailing Plaintiff's consistent mental health difficulties conflicts with Dr. Adams's opinion noting the same.

including the following excerpt regarding Plaintiff's diagnoses of major depression and panic disorder with agoraphobia:

> In my clinical judgment, [Plaintiff] is severely depressed (w/o psychotic features), and has been somewhat unresponsive to treatment interventions, despite her excellent compliance with appointments and taking her medications. Her depression has not improved much in the 2.5 years [Dr. Adams and I] have treated her, and recently has worsened. As a result of her symptoms, including: loss of energy, poor sleep, poor appetite, chronic irritability, crying spells, self-loathing, poor concentration, and social problems, she has become isolative and has lost much of her former functionality. . . . Her concentration and focus is [sic] poor. She now relies quite a bit on family to assist her with [activities of daily living] and basic household management. . . . [She] has panic attacks on a daily basis. During these panic attacks, she is completely unable to function. This condition has worsened over the past year [and s]he is now almost unable to drive due to recurrent panic attacks while driving.

Tr. 681. The ALJ's summary rejection of this medical opinion also does not comport with regulations or applicable caselaw. The Fourth Circuit determined a similar analysis to be improper in *Cannon*. 2023 WL 2147306, at *9 ("[G]iven the ALJ's duty to balance the record's evidence, to disregard a 20-year treatment relationship due to a singular sentence is a disproportionate response. Thus, this aspect of the Commissioner's reasoning cannot be accepted."). On remand, the ALJ should properly evaluate the rest of Ms. Ervin's opinion.

In light of the ALJ's failure to abide by this Court's previous remand order and to properly evaluate the medical opinions in the record, I need not address whether the remainder of the ALJ's analysis complied with the relevant legal standards. In ordering remand for further consideration to the SSA, I express no opinion as to whether the ALJ's ultimate conclusion that Plaintiff is not entitled to benefits is correct.

For the reasons set forth herein, Defendant's motion for summary judgment, ECF 18, is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing order follows.

Sincerely yours,

/s/
Stephanie A. Gallagher
United States District Judge